Pratt v City of New York (2025 NY Slip Op 51770(U))

[*1]

Pratt v City of New York

2025 NY Slip Op 51770(U)

Decided on November 7, 2025

Supreme Court, New York County

Kingo, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on November 7, 2025
Supreme Court, New York County

Benjamin Pratt, Petitioner,

against
City of New York, Respondent.

Index No. 163284/2025

For Petitioner:
Samuel Shapiro, Esq.
Emery Celli Brinckerhoff Abady Ward & Maazel LLP
One Rockefeller Plaza, 8th Floor
New York, New York 10020
(212) 763-5000
For Respondent:
Bradley William Austin, Esq.
New York City Law Department
100 Church Street
New York, New York 10007
(212) 356-8744

Hasa A. Kingo, J.

The following e-filed documents, listed by NYSCEF document number (Motion 001) 2, 8, 9, 10 were read on this motion for LEAVE TO FILE.
Petitioner Benjamin Pratt ("Petitioner") moves, pursuant to General Municipal Law ("GML") § 50-e(5) and Article 4 of the CPLR, for leave to serve a late notice of claim upon Respondent City of New York (the "City") arising from allegations that New York City Police Department ("NYPD") officers used unlawful excessive force, falsely arrested and imprisoned him, and otherwise violated his rights under federal, state, and local law in connection with events on November 9, 2024. For the reasons that follow, the petition is granted.
BACKGROUND AND PROCEDURAL HISTORY
On November 9, 2024, at 780 Greenwich Street in Manhattan, Petitioner entered an apartment after an occupant within opened the door. Moments later, he voluntarily departed and [*2]proceeded to an unoccupied unit elsewhere in the building. NYPD Officer Lamar Warner (Shield No. 25457) arrived on scene and observed Petitioner. According to Petitioner, without provocation or warning, Officer Warner suddenly charged at him and struck him repeatedly in the head. Petitioner further alleges that Officer Warner, joined by other unidentified NYPD officers (John and Jane Does Nos. 1—10), forced him to the ground, kicked him, and handled him with excessive aggression as he attempted to comply—pleading with the officers to stop, believing in that moment that his life was in imminent peril.
Petitioner sustained a serious injury to his left index finger, lacerations to the back of his head, facial bruising, and a black eye. He was transported to Mount Sinai Hospital, where he remained in police custody for several days. There, he was treated for severe swelling and infection of the injured finger, including intravenous and oral antibiotics and a drainage procedure, and for injuries to his head and face. Upon discharge to NYPD custody on or about November 13, 2024, with instructions that he receive prescribed antibiotics, Petitioner was instead brought to central booking and detained overnight without his medication. The following day, when his hand again showed significant swelling, a criminal defense attorney at arraignment requested emergency medical care; Petitioner was transported back to the hospital for further treatment before arraignment proceeded.
Petitioner further alleges lasting physical and psychological sequelae, including pain, functional impairment, and post-traumatic stress symptoms. On October 8, 2025—within one year and ninety days of the November 9, 2024 incident—Petitioner commenced this special proceeding seeking leave under GML § 50-e(5) to file a late notice of claim. The proposed notice of claim asserts causes of action including excessive force, assault, battery, false arrest, false imprisonment, negligence, negligent hiring, training, supervision, and retention, failure to intervene, intentional and negligent infliction of emotional distress, civil rights violations, respondeat superior, and related theories.
Petitioner contends that the City has long possessed body-worn camera ("BWC") footage and other contemporaneous records documenting the encounter; that the Manhattan District Attorney's Office Police Accountability Unit ("PAU") opened an excessive-force investigation; and that in July 2025, during a PAU interview, he was shown the BWC footage for the first time, at which point he promptly sought civil counsel. He retained counsel in late September 2025 and moved for leave on October 8, 2025.
The City opposes, arguing that Petitioner's application is untimely under GML § 50-e(1)(a), that he lacks a reasonable excuse for an "egregious" delay, that the City did not acquire actual knowledge of the essential facts constituting the claim within 90 days or a reasonable time thereafter, that mere existence of BWC or internal records does not satisfy the "actual knowledge" requirement under Matter of Jaime v City of New York (41 NY3d 531 [2024]), and that the City is substantially prejudiced.

ARGUMENTS
Petitioner maintains that this application falls squarely within the temporal bounds authorized by General Municipal Law § 50-e(5), as it was commenced well within one year and ninety days of the incident. He contends that the City obtained immediate and actual knowledge of the essential facts underlying his claims because its own employees—NYPD officers—directly participated in, observed, and documented the encounter; because body-worn camera footage and related NYPD records captured the use of force, the circumstances of his arrest, and the resulting injuries; and because the PAU's excessive-force investigation, [*3]undertaken in reliance on City-generated materials, reflects contemporaneous awareness of the nature and gravity of the alleged misconduct. In Petitioner's view, the City cannot credibly claim substantial prejudice where the critical evidence, including video recordings, incident reports, medical escort records, and arrest and custody documentation, has at all times remained within its possession or control and where it has either already investigated or had a full opportunity to investigate the conduct at issue. Petitioner further asserts that he has articulated a reasonable excuse for his delay: he sustained significant injuries, remained entangled in pending criminal proceedings, reasonably feared reprisal and futility absent objective corroboration, and moved expeditiously once, in July 2025, he viewed the body-worn camera footage and learned that an excessive-force investigation was underway. Even if the court were to regard his excuse as imperfect, Petitioner emphasizes that controlling precedent establishes that strong evidence of actual knowledge and an absence of prejudice justifies granting leave notwithstanding any arguable deficiency in the explanation for delay.
The City counters that the proposed notice of claim was served nearly eleven months after the incident, far beyond the 90-day statutory period, without any excuse that satisfies General Municipal Law § 50-e. It argues that neither ignorance of the law, nor a decision to await review of body-worn camera footage, nor generalized concerns arising from pending criminal charges constitutes a reasonable justification for the delay. Relying on Matter of Jaime v City of New York (41 NY3d 531 [2024]), together with Washington v City of New York (72 NY2d 881 [1988]), Williams v Nassau County Med. Ctr. (6 NY3d 531 [2006]) and various Appellate Division decisions, the City contends that the mere involvement of municipal employees, the existence of internal records, or the fact of an arrest or prosecution does not, without more, establish "actual knowledge of the essential facts constituting the claim." The City further asserts that Petitioner has not demonstrated, through competent proof of the contents of the alleged records, that the City had timely, specific notice of the theories of liability he now advances. Finally, the City maintains that the delay has substantially prejudiced its ability to defend the case on the merits because witness memories may have faded, potential witnesses may be more difficult to locate, certain records may be sealed, and the absence of a timely notice of claim allegedly deprived it of the opportunity to conduct a prompt and focused investigation.

DISCUSSION
I. Legal Standard Under GML § 50-e(5)
General Municipal Law § 50-e(1)(a) requires a claimant to serve a notice of claim upon a public corporation within 90 days after the claim arises. General Municipal Law § 50-e(5), however, confers upon the court broad discretion to extend the time to serve a notice of claim, provided that the application is made within the applicable limitations period, here one year and ninety days from the date of the incident (see Brown v City of New York, 95 NY2d 389, 393—394 [2000]). In exercising that discretion, the court must consider, in particular, whether the public corporation, its attorney, or its insurance carrier acquired actual knowledge of the essential facts constituting the claim within 90 days or within a reasonable time thereafter; all other relevant circumstances, including whether the claimant has a reasonable excuse for the delay; and whether the delay has substantially prejudiced the public corporation in maintaining its defense on the merits (see GML § 50-e[5]; Matter of Newcomb v Middle Country Cent. Sch Dist, 28 NY3d 455, 463—466 [2016]. Actual knowledge is the most important factor in this analysis (Matter of Katsiouras v City of New York, 106 AD3d 916, 917 [2d Dept 2013]). A claimant's failure to demonstrate a compelling excuse is not dispositive where the record otherwise [*4]establishes actual knowledge and an absence of substantial prejudice (see Matter of Mitchell v City of New York, 134 AD3d 941, 942 [2d Dept 2015]; Matter of Grande v City of New York, 133 AD3d 752, 753 [2d Dept 2015]; Matter of Holbrook v Village of Hoosick Falls, 168 AD3d 1263, 1264 [3d Dept 2019]. Guided by these principles, the court addresses in turn actual knowledge, prejudice, reasonable excuse, and Respondent's reliance on Jaime and other authorities.
II. Actual Knowledge of the Essential Facts
The record, as presented, demonstrates that the City obtained actual knowledge of the essential facts constituting Petitioner's claims within a reasonable time following the incident. The encounter involved on-duty NYPD officers, including Officer Warner, who allegedly used significant force resulting in visible injuries and immediate hospitalization, followed by continuing complications while Petitioner remained in City custody. By operation of NYPD policy and practice, such an event necessarily generated contemporaneous documentation—body-worn camera footage, arrest paperwork, use-of-force reports, hospital escort logs, and related custodial records—created and maintained by City agencies. New York courts have long recognized that, where a municipality, through its own employees, directly participates in and contemporaneously documents the underlying events in sufficient detail to apprise it of the nature of the alleged wrongdoing, such documentation may constitute actual knowledge under General Municipal Law § 50-e (see, e.g., Matter of Grande v City of New York, 133 AD3d 752, 753 [2d Dept 2015]; Castaneda v Nassau Health Care Corp., 89 AD3d 782, 783 [2d Dept 2011]; Matter of St. Paul Guardian Ins. Corp. v Pocatello Fire Dist., 90 AD3d 761, 762 [2d Dept 2011]; Matter of Dewey v Town of Colonie, 54 AD3d 1142, 1143 [3d Dept 2008]; cf. Matter of Beary v City of Rye, 44 NY2d 398, 412 [1978]).
Here, Petitioner does not rely on conjecture about what records might exist; he specifically alleges, without meaningful contradiction, that body-worn camera footage captures the use of force, the nature and extent of his injuries, and the circumstances of his detention and medical care, and that City officials and specialized accountability entities obtained and reviewed these materials in assessing whether Officer Warner and others engaged in misconduct. Those allegations describe a robust and targeted evidentiary record originating from City actors and systems and directed to the very conduct that forms the gravamen of Petitioner's claims. This is not a scenario in which the City merely became aware that an arrest occurred or an injury was reported in a generic sense. Rather, the documentation, as alleged, addresses who used force, how and when the force was applied, the observable injuries that ensued, the custodial setting in which the events unfolded, and the ensuing medical consequences—all of which go to the core of Petitioner's excessive-force and related theories of liability.
Although the District Attorney's Office functions as a State entity, the PAU's use of NYPD-generated body-worn camera footage and records confirms that detailed documentary evidence existed shortly after the incident, depicting the essential facts now alleged. Petitioner's sworn assertion that he viewed this footage during a PAU interview in July 2025 is unrebutted; the same footage and reports, by definition, were then and remain within the City's possession or control. Actual knowledge, as the courts have explained, "contemplates not only knowledge of the facts but also how they relate to the claim to be asserted" (Matter of Werner v Nyack Union Free Sch Dist., 76 AD3d 1026, 1027 [2d Dept 2010]). The materials described here would have alerted the City that Petitioner may possess viable claims for excessive force, assault, battery, false arrest, and related misconduct, not merely that he had been arrested. Recognizing actual [*5]knowledge on these facts does not create a blanket rule for all police encounters; it reflects the specific, substantive information documented by the City in this case. Accordingly, the court finds that Respondent acquired actual knowledge of the essential facts constituting Petitioner's claims within a reasonable time after November 9, 2024, and that this most critical factor weighs heavily in favor of granting the petition.
III. Substantial Prejudice
Applying the framework articulated in Newcomb, once Petitioner has advanced evidence and cogent argument that the delay has not substantially prejudiced the City, the burden shifts to the City to make a particularized evidentiary showing of actual prejudice (see Matter of Newcomb, 28 NY3d at 466—467). Petitioner has made the requisite showing. The incident, as alleged, is thoroughly documented through body-worn camera recordings and internal NYPD and custodial records, substantially mitigating concerns about faded recollections. The principal actors are identifiable NYPD officers whose identities, assignments, and reports are readily ascertainable from those materials. Petitioner's injuries, hospital admissions, and custodial status were recorded contemporaneously, preserving key medical and logistical evidence.
In response, the City offers only generalized assertions that time has passed, that memories may have faded, that witnesses may prove more difficult to locate, and that some records may be subject to sealing pursuant to CPL §160.50. These speculative assertions fall well short of the particularized prejudice showing that Newcomb requires (see id. at 466—467). The suggestion that sealing statutes prevent access to necessary records is unpersuasive in this posture; Petitioner is actively pursuing civil relief, and any sealing issues can be addressed through appropriate waivers, stipulations, or court orders. The prejudice inquiry cannot rest on speculative procedural obstacles that the law equips courts to resolve in aid of a meritorious claim. Moreover, where body-worn camera and internal records contemporaneously capture the events at issue—as alleged here—the City is, if anything, better situated to defend the case on its merits notwithstanding the passage of several months (see Matter of March v Town of Wappinger, 29 AD3d 998, 999 [2d Dept 2006]; Matter of Cook v Maine-Endwell Cent. Sch Dist, 236 AD3d 1167, 1169 [3d Dept 2025]). The City identifies no concrete evidence lost, no specific witness rendered unavailable, and no investigative avenue foreclosed as a result of the timing of this application. On this record, the court concludes that Respondent has not demonstrated substantial prejudice.
IV. Reasonable Excuse
The court further finds that Petitioner has articulated a facially reasonable excuse for his delay, which reinforces the propriety of granting relief under General Municipal Law § 50-e(5). Petitioner sustained significant physical injuries and required hospitalization; upon discharge he remained ensnared in related criminal proceedings and was subject to the ongoing authority of the very institution whose officers he accuses of misconduct. He avers that he feared pursuing civil remedies while criminal charges were pending, doubted whether his account would be credited absent independent corroboration, and therefore waited until July 2025, when he first viewed the corroborative body-worn camera footage during the PAU process, to pursue civil counsel. He then retained counsel in late September 2025 and filed this petition on October 8, 2025—within roughly three months of viewing the footage and within the one-year-and-ninety-day outer limit. While it is settled that ignorance of the law, standing alone, does not constitute a reasonable excuse (see Gaudio v City of New York, 235 AD2d 228 [1st Dept 1997]), the court does not view Petitioner's explanation as relying solely on ignorance. It is grounded instead in [*6]the interplay of serious injury, custodial vulnerability, pending criminal exposure, and a rational reluctance to initiate civil litigation until critical objective evidence and the trajectory of the criminal matter had sufficiently crystallized. In any event, even assuming some arguable deficiency in Petitioner's excuse, such deficiency would not, in itself, require denial of the application where, as here, the record amply supports a finding of actual knowledge and the absence of substantial prejudice (see Matter of Grande, 133 AD3d at 753; Matter of Holbrook, 168 AD3d at 1264).
V. The City's Reliance on Jaime and Other Authorities
The City's heavy reliance on Matter of Jaime v City of New York (41 NY3d 531 [2024]) is misplaced. Jaime does not erect an absolute bar to findings of actual knowledge based on internal records or law-enforcement involvement; rather, it clarifies that courts may not indulge in categorical presumptions that the mere participation of municipal employees, or the bare existence of unspecified records, automatically supplies actual knowledge of the essential facts constituting a claim. The Court of Appeals emphasized that, absent evidence of the nature and content of such records, a municipality's awareness of an arrest, prosecution, or incident in the abstract does not suffice (id. at 540—541).
This case is meaningfully distinct. Petitioner identifies specific body-worn camera footage that purportedly depicts the alleged unprovoked strikes, violent takedown, and resulting injuries, along with records documenting his hospitalization, custodial treatment, and the handling of his medical needs. He further alleges that a specialized excessive-force review was undertaken, signifying that the incident raised concerns beyond those of a routine arrest. The City does not deny the existence of this footage or the related review; instead, it asserts that such materials cannot, as a matter of law, constitute actual knowledge. Jaime does not support so rigid a proposition. Properly read, Jaime forecloses an automatic rule but preserves, and indeed requires, a fact-specific inquiry into whether the municipality possessed timely, substantive information regarding the conduct later challenged. On the detailed allegations presented here, the court concludes that the City did.
Similarly, the City's reliance on Washington v City of New York (72 NY2d 881 [1988]), Williams v Nassau County Med. Ctr. (6 NY3d 531 [2006]), Matter of Iacone v Town of Hempstead (82 AD3d 888 [2d Dept 2011]), Matter of Deegan v City of New York (227 AD2d 620 [2d Dept 1996]), and similar authorities does not alter the analysis. Those cases generally involve records that merely memorialized the occurrence of an event, injury, or treatment without indicating municipal wrongdoing, or petitions supported only by speculation as to what records might exist, with no competent linkage between such records and the specific tort theories later asserted.
In contrast, the materials alleged here—body-worn camera footage, use-of-force documentation, custodial and medical records, and a focused excessive-force investigation—directly concern the conduct now challenged. Under Castaneda v Nassau Health Care Corp. (89 AD3d 782 [2d Dept 2011]), Matter of St. Paul Guardian Ins. Corp. v Pocatello Fire Dist. (90 AD3d 761 [2d Dept 2011]), Matter of Grande v City of New York (133 AD3d 752 [2d Dept 2015]), Matter of Mitchell v City of New York (134 AD3d 941 [2d Dept 2015]), and related decisions, such documentation may properly support a finding of actual knowledge.
Nor do the authorities cited by the City transform General Municipal Law § 50-e(5) into a mechanical bar measured solely by the passage of time. The statute remains an equitable, case-specific mechanism designed to prevent unjust forfeitures where, as here, the statutory factors [*7]collectively favor relief. Recognizing actual knowledge and granting leave on this record is fully consonant with Jaime and its central teaching: courts must insist upon proof of timely and meaningful awareness of the underlying facts, but they must not allow the notice requirement to extinguish potentially meritorious claims where the municipality's own documentation and investigative efforts have already preserved those facts.
VI. Balancing of Factors
Upon careful consideration of all relevant circumstances, the court concludes that the balance of factors under General Municipal Law § 50-e(5) decisively favors the exercise of discretion in Petitioner's favor. The application is timely within the one-year-and-ninety-day limitations period. The City, through its officers and its own records, obtained immediate and detailed knowledge of the incident and of the essential facts underlying Petitioner's claims. The City has failed to demonstrate substantial prejudice; its assertions are speculative and are undermined by the existence of comprehensive contemporaneous documentation. Petitioner's explanation for delay is reasonable in light of his injuries, custodial status, and the timing of corroborative evidence, and, in any event, any perceived deficiency in excuse is outweighed by the strength of the showing on actual knowledge and lack of prejudice. Sound public policy favors resolution of significant allegations of police misconduct and related constitutional and statutory violations on their merits, rather than through technical defaults, particularly where the statutory criteria—properly and rigorously applied—support relief. To deny this application on the facts presented would stretch Jaime beyond its holdings and transform § 50-e into an inflexible shield in precisely the context where the Legislature intended it to prevent "unduly harsh and unjust" forfeitures.
Taken together, these considerations leave no room for doubt as to the proper exercise of the court's discretion. The statutory scheme does not exist to reward indifference to serious allegations where the municipality's own records have preserved reality, nor to penalize an injured claimant who moves diligently once armed with corroborative evidence and relieved of the shadow of criminal jeopardy. It exists to ensure that meritorious claims are heard when the public entity has been meaningfully apprised of the underlying facts and suffers no concrete prejudice in mounting its defense. To grant relief here is not to relax the requirements of General Municipal Law § 50-e or to disregard Jaime; it is to apply both faithfully, in a manner that honors their text, their purpose, and the fundamental principle that accountability and fairness are best served when claims are tested on a developed record rather than extinguished on technical grounds.
The court therefore concludes that leave to serve the late notice of claim is warranted.
Accordingly, it is
ORDERED and ADJUDGED that the Petition of Benjamin Pratt for leave to serve a late notice of claim pursuant to General Municipal Law § 50-e(5) is granted; and it is further
ORDERED and ADJUDGED that Petitioner's proposed notice of claim annexed to the Petition is deemed timely served and filed, nunc pro tunc, upon the City of New York as of the date of entry of this decision and order, for all claims therein asserted to the extent they are otherwise cognizable under applicable law; and it is further
ORDERED and ADJUDGED that Petitioner shall commence any action arising from said notice of claim within the applicable statute of limitations; and it is further
ORDERED and ADJUDGED that nothing herein shall be construed as an adjudication on the merits of any particular cause of action or defense, all of which are preserved; and it is [*8]further
ORDERED and ADJUDGED that any relief not expressly granted is denied.
This constitutes the decision, order, and judgment of the court.
DATE 11/7/2025
HASA A. KINGO, J.S.C.